O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

DANIEL R. PHILLIPS, Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, Defendant.

Case No. EDCV 11-00383-MLG

MEMORANDUM OPINION AND ORDER

Plaintiff Daniel R. Phillips ("Plaintiff") seeks review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. For the reasons stated below, the Commissioner's decision is affirmed.

**I. Factual and Procedural Background**

Plaintiff was born on August 31, 1967. (Administrative Record ("AR") at 119). He completed three years of high school and obtained a General Education Development certificate. (AR at 18-19). Plaintiff has

relevant work experience as a car salesman and as a mixer. (AR at 189, 756).

On April 11, 2008, Plaintiff filed an application for DIB, alleging that he has been disabled since July 30, 2007, due to ongoing pain. (AR at 119, 128). The Social Security Administration denied Plaintiff's application initially and on reconsideration. (AR at 56, 60).

An administrative hearing was held before Administrative Law Judge ("ALJ") Michael Radensky on January 12, 2009. (AR at 17-23). Plaintiff, who was represented by counsel, testified at the hearing. (AR at 19-22). A vocational expert also testified at the hearing. (AR at 31-35). On February 2, 2009, the ALJ issued a decision ("Decision #1) finding that Plaintiff was able to perform his past relevant work and, therefore, was not disabled. (AR at 43-55).

The Appeals Council affirmed the ALJ's decision on April 29, 2009. (AR at 1). Plaintiff commenced an action in this Court, CV 09-01055 MLG. Following a stipulated remand, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ to conduct further proceedings and to give further consideration to statements from Plaintiff's spouse. (AR at 766, 772).

A second hearing was held before the ALJ on June 11, 2010. (AR at 743-60). Plaintiff was represented by counsel and testified in his own behalf. (AR at 746-55). A vocational expert also testified at the hearing. (AR at 755-59).

On August 5, 2010, the ALJ issued a decision (Decision #2) denying benefits.[1] (AR at 733-42). The ALJ found that through his date last insured of June 30, 2008, Plaintiff: (1) had not engaged in substantial

---

[1] In finding Plaintiff not disabled, the ALJ incorporated by reference the findings from Decision #1. (AR at 738).

gainful activity since his alleged onset date of disability (step 1); (2) suffered from severe impairments, including left shoulder impingement syndrome, degenerative disc disease of the lumbar spine, left knee impairment, obesity, and mood disorder (step 2); (3) did not have any impairments that met or equaled the criteria of a listed impairment (step 3); (4) had a residual functional capacity ("RFC") to perform a range of light work;[2] (5) was unable to perform any past relevant work (step 4); but (6) could have performed jobs that existed in significant numbers in the national economy, including work as a bench assembler, small products assembler, and inspector hand packager (step 5). (AR at 734-41). Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from his alleged onset date through his date last insured. (AR at 741).

On February 2, 2011, the Appeals Council denied review, and Decision #2 became the final decision of the Commissioner. (AR at 715-17).

Plaintiff commenced this action for judicial review on March 7, 2011. The parties filed a Joint Stipulation on October 11, 2011. Plaintiff raises the following claims of error:

1. The ALJ erred by failing to give controlling weight to Plaintiff's primary Worker's Compensation physician.

---

[2] The ALJ found that Plaintiff was able to lift and carry 10 pounds frequently and 20 pounds occasionally, sit with normal breaks for six hours in an eight-hour workday, stand and/or walk with normal breaks for six hours in an eight-hour workday, occasionally stoop, kneel, crouch, bend, crawl, balance and climb ramps and stairs, occasionally use his left lower extremity to operate foot controls, and occasionally have contact with co-workers and supervisors. (AR at 736). The ALJ further found that while Plaintiff was able to perform unskilled work, he was precluded from climbing ladders, ropes, and scaffolds, using his left upper extremity for above-the-shoulder work, and performing work tasks involving contact with the public. (AR at 736).

    2. The ALJ provided insufficient reasons for rejecting Plaintiff's credibility.

3. The ALJ provided legally insufficient reasons for rejecting Plaintiff's treating physician's opinion.

4. The ALJ erred by failing to properly consider the third party statement from Plaintiff's spouse.

(Joint Stipulation at 3). Plaintiff seeks remand for payment of benefits. (Joint Stipulation at 32-33). The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (Joint Stipulation at 34). The Joint Stipulation has been taken under submission without oral argument.

**II. Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. *Lingenfelter*, 504 F.3d at 1035 (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715,

720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

**III. DISCUSSION**

    **A. Physicians's Opinions**

Plaintiff contends that the ALJ failed to properly evaluate the opinions of two of his doctors, Guy H. Gottschalk, M.D. and Norman Reichwald, Psy.D. (Joint Stipulation at 3-7, 9-11, 21-25, 27-29).

Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The uncontradicted opinion of a treating physician is entitled to controlling weight, and may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). If a treating physician's opinion is contradicted by other substantial evidence, the treating physician's opinion is still entitled to deference and may be rejected only for "specific and legitimate" reasons supported by substantial evidence. *Lester*, 81 F.3d at 830; *Orn*, 495 F.3d at 631-33. Where an examining physician's opinion is based on independent clinical findings that differ from the findings of the treating physician, the examining physician's opinion may be considered substantial evidence to reject the treating physician's opinion. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The opinion of a nonexamining physician, however, is not by itself

substantial evidence to justify the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831.

Dr. Gottschalk

Dr. Gottschalk, a specialist in occupational medicine, internal work related illnesses, and orthopaedic injuries, began treating Plaintiff in August 2007, for Plaintiff's work-related injuries. (AR at 531-38). Dr. Gottschalk diagnosed Plaintiff with strain and sprain of the cervical thoracic spine, bilateral shoulder strain and tendonitis, and strain and sprain of thoracolumbosacral spine, prior grade 1 spin listhesis (L5-S1), and right knee contusion, resolved. (AR at 534-35). Dr. Gottschalk opined that Plaintiff was temporarily totally disabled. (AR at 536). Dr. Gottschalk continued to designate Plaintiff as not capable of gainful employment and temporarily totally disabled through April 2008. (AR at 490, 501, 511, 528).

In June 2008, Dr. Gottschalk opined that Plaintiff was capable of gainful employment, but was not capable of returning to his previous type of work activity. (AR at 483). Dr. Gottschalk reported that Plaintiff's condition was permanent and stationary. (AR at 483). Dr. Gottschalk also added the following medical conditions to Plaintiff's diagnosis: cervical disc disease with disc bulges, right and left shoulder internal derangement, exacerbation of multilevel cervical disc disease, history of chronic and frequent urinary incontinence, and chronic sleepiness and fatigue. (AR at 481). Dr. Gottschalk deferred the psychological diagnosis to Plaintiff's psychologist. (AR at 481).

In a residual functional capacity questionnaire completed in January 2009, Dr. Gottschalk reported that Plaintiff was capable of lifting and carrying less than 10 pounds frequently and 20 pounds occasionally, had a moderate limitation in the ability to deal with work

stress, would experience frequent interference with attention and concentration, and was likely to be absent from work three times per month. (AR at 667, 669, 671). Dr. Gottschalk opined that Plaintiff's prognosis was poor. (AR at 665).

In July 2009, Dr. Gottschalk concluded that while Plaintiff's condition remained permanent and stationary, Plaintiff was no longer capable of gainful employment. (AR at 959). Dr. Gottschalk also found that Plaintiff suffered from sleep apnea, in addition to his previously diagnosed conditions. (AR at 959).

In January 2010, Dr. Gottschalk opined that Plaintiff was not capable of gainful employment and that no amount of rehabilitation would return Plaintiff to gainful employment. (AR at 948). Dr. Gottschalk found that Plaintiff's orthopedic injury was related to a variety of conditions, including erectile dysfunction, bowel incontinence, hypertension, weight gain and obesity, sleep disorder and sleep apnea, type II diabetes mellitus, and exacerbation of hypercholesterolemia. (AR at 947).

The ALJ rejected Dr. Gottschalk's opinion, relying instead on the opinions of two examining orthopedic surgeons, Robert L. Samson, M.D. and Bunsri T. Sophon, M.D. (AR at 52-53, 315-84, 738-39, 822-33). In April 2008, Dr. Samson, an agreed medical examiner, diagnosed Plaintiff with cervical and lumbar disc disease and bilateral shoulder impairment. (AR at 343-44). Dr. Samson concluded that Plaintiff was capable of resuming normal activity, except for work involving significant bending, stooping, kneeling crouching, crawling or lifting and carrying objects over 25 pounds. (AR at 347). Dr. Sophon, a consultative examiner who evaluated Plaintiff in March 2010, found that Plaintiff was capable of performing light work, except for overhead work with the left arm, more

than frequent reaching with the left arm, balancing, stooping, kneeling, and crouching. (AR at 828-33). Dr. Samson and Dr. Sophon supported their opinions that Plaintiff was capable of work activity with physical examinations of Plaintiff, clinical tests, and review of Plaintiff's medical records. (AR at 315-84, 822-33). Because these examining physicians's opinions rested on objective clinical findings, the ALJ properly viewed them as substantial evidence to reject Dr. Gottschalk's opinion of disability. (AR at 52-53, 739); *Andrews*, 53 F.3d at 1041 (ALJ has "sole[ ] province" to resolve conflicts between credible, yet conflicting, medical evidence).

The ALJ also properly cited the opinions of the state agency reviewing physicians, as they were consistent with the examining doctors's opinions and underlying independent examinations. (AR at 52, 385-91); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); *Andrews*, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

Further, the ALJ properly considered the amount of relevant evidence that supported the treating physician's opinion and the quality of the explanation provided. The ALJ gave less weight to Dr. Gottschalk's opinion to the extent it reflected a conclusory opinion and was not supported by clinical findings. (AR at 53, 738); 20 C.F.R. § 404.1527(d) (treatment history, consistency with the record as a whole, and supportability of report affect weight accorded physician's report); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ explained

that Dr. Gottschalk's opinion that Plaintiff could not return to his former work was primarily based on Plaintiffs' subjective complaints. (AR at 53). As discussed below, the ALJ's decision to discredit Plaintiff's subjective symptom testimony was supported by substantial evidence. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("Credibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions."). Finally, Dr. Gottschalk's opinion was not conclusive as to the ultimate issue of disability. *Magallanes*, 881 F.2d at 751 (citing *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 & n.7 (9th Cir. 1989)). Thus, the ALJ's consideration of Dr. Gottschalk's opinion was supported by substantial evidence.

Dr. Reichwald

Dr. Reichwald, an agreed medical examiner, conducted an initial psychiatric evaluation of Plaintiff in October 2007. (AR at 297-313). Dr. Reichwald diagnosed Plaintiff with major depressive disorder, NOS, anxiety disorder, and a Global Assessment of Functioning ("GAF") score of 48, indicating a serious impairment. (AR at 309). Dr. Reichwald considered Plaintiff to be temporarily totally disabled. (AR at 309). In February 2008, Dr. Reichwald reported that Plaintiff had the following work function impairments: "moderate" restrictions in the ability to comprehend and follow instructions, perform simple and repetitive tasks, relate to others beyond giving and receiving instructions, influence people, and accept and carry out responsibility for directions, control, and planning; "moderate-to-severe" restrictions in the ability to maintain a work pace appropriate to a given work load and perform complex or varied tasks; and "severe" restrictions in the ability to

make generalizations, evaluations or decisions without immediate supervisors. (AR at 288). Concluding that Plaintiff had problems with activities of daily living, social functioning, concentration, persistence, and pace, and adaptation, Dr. Reichwald opined that Plaintiff's emotional impairment was marked and his prognosis was poor. (AR at 289-90).

The ALJ found that Dr. Reichwald's opinion was not entitled to the weight generally afforded to treating physicians, as there were no progress notes establishing the nature and extent of any treating relationship with Plaintiff. (AR at 48). The ALJ also questioned Dr. Reichwald's objectivity, as he had been retained by Plaintiff's attorney in connection with Plaintiff's claim for disability benefits. (AR at 48). While "the purpose for which the report was obtained does not provide a legitimate basis for rejecting it," *Reddick*, 157 F.3d at 726, the ALJ properly rejected Dr. Reichwald's opinion in favor of the conflicting opinions of examining and reviewing doctors, all of whom found no mental limitations beyond those already accounted for in the ALJ's residual functional capacity assessment. (AR at 736).

David E. Sones, M.D., an agreed medical examiner, evaluated Plaintiff in May 2008 and diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. (AR at 421). Dr. Sones assessed Plaintiff with a GAF score of 54, indicating moderate difficulty in social, occupational, or school functioning. (AR at 426). Nevertheless, Dr. Sones concluded that from a psychiatric standpoint, Plaintiff was capable of resuming his usual and customary work duties as a sales person, without the need for any modifications. (AR at 426). Dr. Sones's assessment of Plaintiff's work functioning was consistent with the findings of the consultative examiners, Sohini P. Parikh, M.D. and

Douglas Larson, Ph.D. (AR at 392-436, 739-40, 835-45). In June 2008, Dr. Parikh, diagnosed Plaintiff with mood disorder secondary to his physical condition, but found that Plaintiff did not have any work related psychological impairments. (AR at 435-36). In March 2010, Dr. Larson diagnosed Plaintiff with mood disorder, NOS, with features of psychotic disorder, NOS, and attention deficient hyperactivity disorder. (AR at 841). Dr. Larson assessed Plaintiff with mild to moderate mental limitations in his ability to do complex work, to comply with job rules, to respond to changes in the workplace, to maintain persistence and pace, and to interact with supervisors, coworkers, and the public. (AR 841). The opinions of Drs. Sones, Parikh, and Larson were each supported by independent clinical findings, and thus, constituted substantial evidence upon which the ALJ properly relied. *See Andrews*, 53 F.3d at 1041. The opinions of the state agency reviewing psychiatrists, which were consistent with the examining doctors’s opinions and underlying independent examinations, provided additional support for the ALJ’s rejection of Dr. Reichwald’s opinion. (AR at 47, 437-47, 465-66); *see Tonapetyan*, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); *Andrews*, 53 F.3d at 1041 (“reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it”). Accordingly, a remand or reversal is not warranted on this basis.

**B. Credibility**

Plaintiff contends that the ALJ failed to properly evaluate his subjective complaints and credibility. (Joint Stipulation at 11-17, 19-21).

The determination of credibility and the resolution of conflicts in the testimony are functions of the ALJ acting on behalf of the Commissioner. *Morgan v. Commissioner of Social Security*, 169 F.3d 595, 599 (9th Cir. 1999); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). In general, an ALJ's assessment of credibility should be given great weight. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). The ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements or a lack of candor by the witness. *Fair v. Bowen*, 885 F.2d 597, 604 n. 5 (9th Cir. 1989). Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. *Lingenfelter*, 504 F.3d at 1035-36; *Reddick*, 157 F.3d at 722; *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). Absent evidence showing that a claimant is malingering, the ALJ may reject a claimant's testimony about the severity of his symptoms only by offering "'specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281. "It is not sufficient for the ALJ to make only general findings." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) The ALJ must clearly identify evidence in the record undermining the claimant's testimony to properly discredit his alleged limitations. *Id.*; *see also Reddick*, 157 F.3d at 722 ("the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints") (citations and quotations omitted).

Plaintiff claims that he was injured in July 2007 when a co-worker kicked him in the back of the knees and knocked him to the ground. (RT

at 19-20, 746). At his first hearing in January 2009, Plaintiff testified that he suffered from depression, sleep apnea, incontinence, gout, fatigue, and pain in his low back, feet, and shoulders. (AR at 21-24, 27, 49). According to Plaintiff, he could sit for only 15 minutes at a time and stand for 15 minutes at a time. (AR at 24, 49). At his second hearing in June 2010, Plaintiff testified that his condition had deteriorated. (AR at 747). He had developed an impairment in his left knee, which impeded his ability to walk. (AR at 748-49, 754). Plaintiff also testified about increased mental instability, auditory hallucinations, nightmares, and trouble interacting with people. (AR at 747-48, 751-54).

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, Plaintiff's claims concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent alleged. (AR at 50, 738). The ALJ offered several reasons for discounting Plaintiff's credibility, some of which were incorporated by reference from Decision #1. (AR at 737-38). The Court finds that the ALJ properly discredited Plaintiff's testimony.

First, the ALJ found that the medical evidence conflicted with Plaintiff's asserted limitations. (AR at 53); *see* 20 C.F.R. § 404.1529(c)(2) (explaining that the medical evidence is a relevant factor in determining the severity of the claimant's pain and its disabling effects). In particular, the ALJ cited the opinion of the agreed medical evaluator, Dr. Samson, who found that Plaintiff could resume normal activity, except for work involving significant bending, stooping, kneeling, crouching, crawling, and lifting/carrying more than twenty-five pounds. (AR at 53, 315-84). Dr. Samson's opinion was

consistent with the opinions of the state agency physicians, who concluded that Plaintiff was able to perform light work. (AR at 52, 385-89, 465-66). The ALJ further noted that there was no medical evidence that Plaintiff suffered from radiculopathy, motor or sensory deficits, or muscle atrophy. (AR at 53, 254, 450, 829). And, while Plaintiff appeared at one consultative exam using a cane, there was no evidence that Plaintiff had ever been prescribed an assistive device to ambulate nor had any doctor opined that a cane was required. (AR at 53, 125, 254, 737, 829). Though subjective symptom testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence was a legitimate and relevant factor to be considered in assessing the severity of Plaintiff's pain and its disabling effects. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (ALJ may consider lack of objective medical evidence to corroborate claimant's subjective symptoms, so long as it is not the only reason for discounting a claimant's credibility); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

The ALJ also properly determined that Plaintiff's ability to perform certain daily activities were at odds with his claims of debilitating pain. (AR at 152-59, 737). At his hearings, Plaintiff testified to extremely limited activities. (AR at 21-31, 749-55). For example, Plaintiff testified that he waters the yard, lies on the couch five hours a day, tries not to drive, does not help out around the house, does not cook, does not help care for his pets, and is not good with people. (AR at 21-31, 749-55). In a work function report, however, Plaintiff admitted that he helps to feed his two dogs, sits outside, maintains his personal care, prepares meals, washes dishes, dusts,

prunes plants, shops, and socializes with the mailman and the neighbors. (AR 152-59). Thus, in discounting Plaintiff's credibility, the ALJ properly relied on the inconsistencies between Plaintiff's testimony about his extreme limitations and his admissions about things that he is still able to do despite his impairments, as set forth in his work function report. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries ... may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing *Fair*, 885 F.2d at 604); *Light*, 119 F.3d at 792 (inconsistencies between testimony and conduct may be considered in weighing a claimant's credibility).

In sum, the ALJ articulated specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony. *Smolen*, 80 F.3d at 1284.

**C. Lay Witness Opinion**

In Decision #1, the ALJ found that Plaintiff's alleged mental impairment was not severe, as it did not cause more than minimal limitation in his ability to perform basic mental work activities for more than 12 months. (AR at 45). In Decision #2, the ALJ determined that Plaintiff's mood disorder was "severe." (AR at 736). The ALJ found that Plaintiff's mental impairment precluded Plaintiff from performing tasks involving contact with the public and restricted Plaintiff to occasional contact with co-workers and/or supervisors. (AR at 736).

Plaintiff contends that the ALJ failed to properly consider the impact of his mental impairments on his ability to work at step two of the sequential evaluation process. In particular, Plaintiff asserts that the ALJ failed to properly consider a third party function report

submitted by Plaintiff's wife. (Joint Stipulation at 31; AR at 136-43).

Plaintiff's wife reported that she helped Plaintiff with general activities of daily living, including feeding the dogs, cooking, driving, and walking. (AR at 138-39). She also indicated that Plaintiff had difficulty concentrating, became frustrated easily, could not climb stairs, and was limited to carrying 20 pounds, walking 500 feet before needing a rest, and standing 10 minutes. (AR at 140-42).

Lay witness testimony as to a claimant's symptoms or how an impairment affects the ability to work is competent evidence that the Commissioner must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3). An ALJ may disregard such evidence only if he gives reasons "that are germane to each witness." *Dodrill*, 12 F.3d at 919.

In Decision #2, the ALJ discounted the statement from Plaintiff's wife to the extent it conflicted with the residual functional capacity assessed by the ALJ. (AR at 737). The ALJ stated a germane reason for rejecting Plaintiff's wife's statement, finding that it "mirrored the claimant's allegations," which were found to be not credible. (AR at 737); *see Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 684 (9th Cir. 2009) (explaining that where lay witness testimony is similar to the properly rejected subjective symptom testimony of the claimant, "it follows that the ALJ also gave germane reasons for rejecting her testimony"). Further, because Plaintiff's wife's statement essentially repeated Plaintiff's own testimony, her statement was not significantly probative and therefore, could be disregarded as such. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Accordingly, reversal is not warranted on this claim.

**IV. Conclusion**

For the reasons stated above, the decision of the Commissioner is affirmed.

DATED: November 4, 2011

MARC L. GOLDMAN
United States Magistrate Judge